IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

WILLIAM CRAIG BIBLE                                                                    PLAINTIFF

V.                          CASE NO. 5:16-CV-5336

AARON JOHNSON;
JURENAL RUBIO;
SHERIFF MEYER GILBERT;
CAPTAIN LYNN HAHN; and
LIEUTENANT ROBIN HOLT                                                              DEFENDANTS

## MEMORANDUM OPINION AND ORDER

Plaintiff William Craig Bible filed this action pursuant to 42 U.S.C. §1983. He proceeds *pro se* and *in forma pauperis*. The case is before the Court on the Motion for Summary Judgment (Doc. 20) filed by the Defendants on June 19, 2017. Additionally, Defendants filed a Brief in Support (Doc. 21), a Statement of Facts in Support (Doc. 22), and a Supplement to the Statement of Facts in Support (Doc. 23). Plaintiff responded to Defendants' Motion on August 18, 2017 (Doc. 29). The Motion is now ready for decision.

Plaintiff claims that while incarcerated at the Benton County Detention Center, ("BCDC"), he was subjected to the use of excessive force. Specifically, Plaintiff contends that Deputies Aaron Johnson and Jurenal Rubio used excessive force while moving him to a lock down cell and that Defendants Sheriff Meyer Gilbert, Captain Lynn Hahn, and Lieutenant Robin Holt are responsible in their supervisory and official capacities. In his Response to Defendants' Motion for Summary Judgment (Doc. 29), Plaintiff requests that his suit be dismissed against all Defendants except his excessive force claim against Defendant Johnson. The Court hereby **GRANTS** Plaintiff's request

to dismiss Defendants Rubio, Gilbert, Hahn, and Holt, and will address summary judgment as it pertains to Defendant Johnson only.

## I. BACKGROUND

In September 2016, Plaintiff waived his right to a final revocation hearing and was in the BCDC awaiting transport to the Arkansas Community Correction Facility. Plaintiff was in convicted status at the time of the events at issue in this case. (Doc. 1 at 4; Doc. 21 at 4; Doc. 22-2 at 6). On October 16, 2016, Plaintiff was standing at the door of D149 waiting in a line to receive medications and have his blood sugar taken by the nurse. (Doc. 22-4 at 22, 23). Defendant Johnson came into the pod where Plaintiff was standing, and Plaintiff witnessed Defendant Johnson reprimand another inmate for a commissary violation. *Id.* Plaintiff thought Defendant Johnson was giving the other inmate a hard time. *Id.* at 16, 17). Plaintiff told Defendant Johnson that it was "petty," referring to how Defendant Johnson was treating the other inmate. (Doc. 1 at 4, Doc. 22-4 at 17). Plaintiff alleges that Defendant Johnson got upset with him and told him to get his stuff ready because he would be going to lockdown when Defendant Johnson returned. The reason given for the punishment was Plaintiff's interference with facility operations and staff duties. (Doc. 22-4 at 17; Doc. 22-2 at 15, 16). Plaintiff responded, "okay," got his medicine, sat down, and did not think anything more of the incident. (Doc. 22-4 at 17).

When Defendant Johnson returned, he instructed Plaintiff to get his stuff, as he was being taken to the lockdown cell. Plaintiff asserts that he then told Defendant Johnson "the other day, a guy stood in there and cussed you out, threatened - - told you to take your badge off, threatened you. You didn't do anything to him. You're

going to lock me up for saying petty? This is petty." (Doc. 22-4 at 17). Defendant Johnson did not fully understand what Plaintiff was saying, but heard Plaintiff say "take off your badge" and took that as a threat. (Doc. 22-2 at 16). Plaintiff states that Defendant Johnson then grabbed him by the throat and "slammed him off the glass window." (Doc. 1 at 5, 22-4 at 18).

The video of the incident is without sound but shows Defendant Johnson directing Plaintiff through a doorway between Pod D, Control B and the Pod D hallway. (Doc. 22-5). Plaintiff, who is carrying his belongings and appears to be smiling, can be seen talking to Defendant Johnson as Plaintiff approaches the door. *Id.* Plaintiff briefly pauses in the doorway while he continues talking, and then something precipitates an aggressive reaction by Defendant Johnson. In a single swift movement, Defendant Johnson pulls Plaintiff from the doorway, applies one hand to the front of Plaintiff's neck, and pins the back of Plaintiff's head against the glass wall of the control room. *Id.* Defendant Rubio then joins Defendant Johnson and they spin Plaintiff around to secure his arms behind his back. During this process the Plaintiff's chest and the side of his face are mashed against the glass wall. *Id.* The use of force as just described occurs within a period of 22 seconds. During this time, two other officers are standing in the pod control room watching these events from just a few feet away. *Id.* Then, while holding both of Plaintiff's arms behind his back, Defendants Johnson and Rubio walk Plaintiff out of the control room and down the hall. *Id.* They all stop about halfway down the hall and Plaintiff is then positioned (without noticeable force) against the side wall. Johnson and Rubio then escort Plaintiff back to the control room, where Plaintiff is released and permitted to recover

his belongings (that had fallen to the floor during the ruckus). *Id.* This is where the footage ends. The video does not suggest that Plaintiff was *physically* aggressive or combative at any point. *Id.* According to Plaintiff, his shoulder began hurting, which he attributed to his arms being restrained behind his back. He took naproxen for the pain. Plaintiff does not allege any other injuries, damages, or impairments.

## II. LEGAL STANDARD

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the nonmoving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986), the record "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists." *Nat'l Bank of Commerce v. Dow Chem. Co.*, 165 F.3d 602, 607 (8th Cir. 1999).

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "They must show there is sufficient evidence to support a jury verdict in their favor." *Nat'l Bank*, 165 F.3d at 607 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). "A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment." *Id.* (citing *Metge v. Baehler*, 762 F.2d 621, 625 (8th Cir. 1985)). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version

of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007). In this particular case, the incident that is the subject of the Complaint was captured on video. The Supreme Court has recognized that a video recording may so contradict the evidence of one party or the other as to eliminate any genuine dispute about what occurred. *Id.* at 380. In such a circumstance, the Court must view the facts in the light depicted by the video. *Id.* at 381.

### III. DISCUSSION

Defendant Johnson has moved for summary judgment on the following grounds: 1) The force used against Plaintiff was reasonable; and 2) Defendant Johnson is entitled to qualified immunity.

### A. Section 1983 in General

Section 1983 provides a federal cause of action for the deprivation, under color of law, of a citizen's "rights, privileges, or immunities secured by the Constitution and laws" of the United States. In order to state a claim under 42 U.S.C. § 1983, plaintiff must allege that the defendant acted under color of state law and that he violated a right secured by the Constitution. *West v. Atkins*, 487 U.S. 42 (1988); *Dunham v. Wadley*, 195 F.3d 1007, 1009 (8th Cir. 1999). The deprivation must be intentional; mere negligence will not suffice to state a claim for deprivation of a constitutional right under § 1983. *Daniels v. Williams*, 474 U.S. 327 (1986); *Davidson v. Cannon*, 474 U.S. 344 (1986).

### B. Official Capacity Liability

Plaintiff has asserted an official capacity claim. Defendant argues that Plaintiff has not pointed to any unconstitutional county policy or custom. The Court agrees.

An official capacity claim "is functionally equivalent to a suit against the employing governmental entity." *Veatch v. Bartels Lutheran Home*, 627 F.3d 1254, 1257 (8th Cir. 2010). In other words, the official capacity claim is treated as a claim against Benton County. *See Murray v. Lene*, 595 F.3d 868, 873 (8th Cir. 2010).

"A municipality can be liable under § 1983 only if a municipal policy or custom caused a plaintiff to be deprived of a federal right." *Alexander v. Hedback*, 718 F.3d 762, 766 (8th Cir. 2013) (citations omitted). "A governmental policy involves a deliberate choice to follow a course of action . . . made from among various alternatives by an official who has the final authority to establish governmental policy." *Brockinton v. City of Sherwood*, 503 F.3d 667, 674 (8th Cir. 2007) (internal quotations and citations omitted). A "custom involves a pattern of persistent and widespread . . . practices which become so permanent and well settled as to have the effect and force of law." *Id*.

"[O]ur first inquiry in any case alleging municipal liability under § 1983 is the question whether there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation." *City of Canton v. Harris*, 489 U.S. 378, 385 (1989). "Moreover, the plaintiff must show not only that a policy or custom existed, and that it was causally related to the plaintiff's injury, but that the policy itself was unconstitutional." *Luckert v. Dodge Cnty.*, 684 F.3d 808, 820 (8th Cir. 2012) (internal quotation marks and citation omitted). Here, Plaintiff makes no such showing. There is no basis on which Benton County may be held liable.

### C. Excessive Force Claim against Defendant Johnson

"When confronted with a claim of excessive force alleging a violation of the Eighth Amendment, the core judicial inquiry is 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" *Santiago v. Blair*, 707 F.3d 984, 990 (8th Cir. 2013) (quoting *Hudson v. McMilliam*, 503 U.S. 1, 6-7 (1992)). "[E]very malicious push or shove does not amount to a deprivation of constitutional rights." *Hickey v. Reeder*, 12 F.3d 754, 757 (8th Cir. 1993). "Whether a situation justifies the use of force to maintain or restore discipline is a fact specific issue that turns on the circumstances of the individual case or the particular prison setting." *Johnson v. Blaukat*, 453 F.3d 1108, 1113 (8th Cir. 2006) (internal quotations omitted). The Court must consider such factors as the need for the application of force, the relationship between the need and the amount of force that was used, the extent of the injury inflicted, the threat to the safety of the staff and inmates, and any attempt to temper the severity of the response. *Whitley v. Albers*, 475 U.S. 312, 321 (1986). In *Wilkins v. Gaddy*, 590 U.S. 34 (2010), the Supreme Court held that "the extent of any resulting injury, while material to the question of damages and informative as to the likely degree of force applied is not in and of itself a threshold requirement for proving this type of Eighth Amendment claim." *Williams v. Jackson*, 600 F.3d 1007, 1012 (8th Cir. 2010), *Crumley v. St. Paul*, 324 F.3d 1003, 1007 (8th Cir. 2003) ("not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates" the Constitution) (internal quotation marks and citation omitted).

In *Scott v. Churchill*, the Sixth Circuit held that the Eighth Amendment was not violated when a correctional officer grabbed an inmate's neck and threatened him, but the inmate suffered no physical injury as a result. 225 F.3d 659 (6th Cir. 2000). "Every malevolent touch by a prison guard does not give rise to an Eighth Amendment cause of action, and the prisoner must allege that he sustained more than de minimis injury in order to state a viable excessive force claim." *Id.* (citing *Hudson v. McMillian*, 503 U.S. 1, 9 (1992)). Similarly, in *Norton v. City of Marietta*, the Tenth Circuit held that "grabbing [an inmate] around the neck" and "twisting and hurting it" was not "objectively harmful enough to establish a constitutional violation." 432 F.3d 1145, 1156 (10th Cir. 2005).

In reviewing the facts in the light most favorable to Plaintiff, including the video evidence, the Court finds no genuine issue of material fact to suggest Defendant Johnson exercised force maliciously or sadistically, in order to cause harm. *See, e.g., Bell v. Wolfish*, 441 U.S. 520, 547 (1979) (prison officials given wide-ranging discretion to utilize judgment in application of force to maintain institutional security); *Travillion v. Leon*, 248 Fed. App'x 353, 356 (3d Cir. 2007) (no Eighth Amendment violation stated when jailer pulled inmate out of his seat, twisted his arms, and put him in handcuffs before escorting him to disciplinary housing unit); *Tatum v. Shoemaker*, 2012 WL 899633, at *10 (W.D. Va. March 16, 2012) (no Eighth Amendment violation for tightening handcuffs and twisting plaintiff's arms to escort him to a different area of the jail).

Something unexpected was said in the doorway to spark Johnson's sudden use of force to restrain Plaintiff. Accepting Plaintiff's version of what was said as true, but

8

taking into account the added context of the video evidence, it appears that Johnson heard Plaintiff say "take off your badge"—which Plaintiff admits he stated, though not in the sense Johnson assumed—and Johnson, misconstruing the comment, moved to restrain Plaintiff because of an erroneous belief that Plaintiff was threatening him. *See* Doc. 22-2, p. 16. The Plaintiff's neck, head, and body were forcefully positioned against the glass wall for a total of 22 seconds. But contrary to Plaintiff's allegations, the video does not show Plaintiff's head or body being "slammed" off the glass wall. The forceful maneuvering that did occur was done in an effort to restrain Plaintiff's arms behind his back. The scope of force that was exercised, in terms of the measures taken, the intended purpose, and the duration applied, was no greater than reasonably necessary to restrain Plaintiff's arms behind his back. Relatively speaking, Johnson's use of force was *de minimis* in nature and commensurate with the legitimate purpose of maintaining or restoring discipline.[1] As the force Johnson used did not rise to the level of an Eighth Amendment violation, the claim against him will be dismissed. In the absence of an actionable constitutional violation, there is no need for the Court to consider qualified immunity.

---

[1]

Plaintiff also confirmed in his deposition that he suffered no long-term or serious injury to his shoulder as a result of the incident:

> And you know, really, I know that was put in there and all [referring to the shoulder injury mentioned in the Complaint], but my main deal is, I'm not concerned—my shoulder feels better now. I'm not so concerned about that. What I'm concerned about is what's on that video and where he grabbed me by the throat and slammed me off that wall and they did me the way they did me. There was no reason to do that. I showed no aggression. I'm holding a mat.

(Doc. 22-4 at 47).

## IV. CONCLUSION

For the reasons stated, Defendants' Motion for Summary Judgment (Doc. 20) is **GRANTED**, and the case is **DISMISSED WITH PREJUDICE**.

**IT IS SO ORDERED** on this 8th day of February, 2018.

/s/ Timothy L. Brooks
TIMOTHY L. BROOKS
UNITED STATES DISTRICT JUDGE